## J. J. STOCKARD v. J. W. ECKFORD.

Landlord and Tenant — Contract Between — Parol Evidence.

> Where a tenant executes and delivers to the landlord a written agreement for the payment of six bales of cotton, "balance due for the year," the landlord is not precluded from introducing parol evidence to show that twenty bales and not six bales of cotton was the rent to be paid for that year.[1]

Same — Acceptance of Contracts of Sub-tenants — Parol Evidence to Explain the Agreement.

> A landlord who accepts the assignments of contracts of sub-tenants of his lessee, where the written indorsements do not show the consideration for which or the agreement upon which they were to be transferred, is not precluded from showing, by parol evidence, the agreement to have been that they were received as collateral for and not payment of the rent.

Same — Appropriation of Proceeds of Property Seized for Rent.

> A landlord who seizes the property of his tenant on a demand for rent will not be permitted, after acquiring possession for the satisfaction of that demand, to apply the proceeds of the property so seized to the payment of another claim not mentioned in the complaint, and as to which he had no lien on the property.[2]

Distress for rent by J. J. Stockard against J. W. Eckford and W. A. King. From a verdict and judgment for defendant, Eckford, plaintiff, appeals.

---

1

Parol evidence is admissible to show that a note described in a deed of assignment, as being for the amount of $904, was, in fact, only for $900, and that the extra four dollars was for protest fees, and hence that the note for $900 passed by the deed. Marsh v. Mandeville, 6 Cush. 118; Mandeville v. Stockett, 6 Cush. 398.

The rules which prevent the introduction of parol evidence to contradict or vary a writing, have no application where it is offered to show a want or failure of consideration. Buckels v. Cunningham, 6 S. & M. 358; Matlock v. Livingston, 9 S. & M. 489.

Nor where it is offered to show that the contract was altogether void or never had any legal existence, either by reason or fraud, or want of due execution or delivery. Wren v. Hoffman, 41 Miss. 616.

In such cases it is admissible to prove the true consideration, though a different consideration by expressed in it. Marsh v. Lisle, 34 Miss. 173.

And so it is admissible to show that the note sued on was given in renewal

In 1878, appellant, Stockard, rented his plantation in Clay county, Mississippi, to W. A. King for twenty bales of cotton, King executing his note therefor on January 1, 1878.  In October, 1878, King and Stockard made a verbal agreement for King to rent the place for the year 1879 on the same terms.  King sub-rented part of the land to different parties for fourteen bales of cotton, and on the 8th day of May, 1879, he transferred these several notes to Stockard, and at the same time executed his individual note to Stockard for six bales of cotton, "balance of the

of another which was payable in depreciated currency.  Eckford v. Hogan, 44 Miss. 398.

Where parties embody their mutual agreements in a formal written instrument, it must be taken as containing all they then desired to preserve the evidence of, and, in the absence of fraud or mistake, it is not competent to add or take from it by parol evidence.  Cocke v. Blackburn, 58 Miss. 537; Baum v. Lynn, 72 Miss. 932; 18 So. 428.

Where a writing is intelligible in itself, parol evidence is incompetent to interpret the terms used in it.  Millsaps v. Bank, 69 Miss. 918; 13 So. 837.

In construing contracts of doubtful meaning, parol testimony is competent to show such relation of the parties to each other, and the subject-matter and the surrounding circumstances, as adds to the interpretation of the language employed, so as to ascertain the intent.  Gillenwaters v. Miller, 49 Miss. 150; Atkinson v. Sinnott, 67 Miss. 502; 7 So. 289.

Where the words in question are all sensible, and have a settled meaning, but at the same time admit of two interpretations, according to the subject-matter in contemplation, the ambiguity should not be referred to a class intermediate between latent and patent ambiguities—a class recognized by some authorities, but to the class of latent ambiguities.  Schlottman v. Hoffman, 73 Miss. 188; 18 So. 893.

And where the language used is susceptible of different meanings, it is competent to inquire what the parties understood it to mean.  Tufts v. Greenwald, 66 Miss. 360; 6 So. 156.

An exception to the rule that extrinsic evidence is not admissible to explain or vary written instruments, is that when anything appears on the face of the paper to suggest a doubt as to the party bound, or the character in which a signer acted in affixing his name, parol testimony may be admitted as between the original parties to show the true intent and meaning of the parties.  A bill of exchange, signed "Eugene Martin, Treasurer," is within the exception, and the drawer may show that it is not his personal obligation.  Martin v. Smith, 65 Miss. 1; 3 So. 33.

Extrinsic evidence is admissible for identifying the thing as well as the person intended by the maker of the instrument, that is to enable the court to interpret his words and to determine whether the description applies to the thing claimed.  Peacher v. Strauss, 47 Miss. 353.

Parol evidence is not admissible to contradict the language of written con-

rent due for the year 1879." In November, 1879, Stockard sued out a writ of seizure against King and others in Clay county for six bales of cotton, which was levied on agricultural products grown on the leased premises, which Stockard took charge of and applied to the payment of a debt due him and not to the rent debt. Eleven•bales of cotton, grown on the same land, were sold to appellee, Eckford, and Stockard sued out the writ of seizure in this case, which was levied on the eleven bales of cotton bought

tracts so as to contradict or vary the contents, but may be resorted to whenever necessary to ascertain the nature and qualities of the subject of the contract. Dixon *v.* Cook, 47 Miss. 220.

Parol evidence is always admissible to show which of two things of the same name and description is meant, and where a deed is ambiguous, an antecedent agreement or bond for title out of which it originated may be resorted to for explanation, where it does not contradict or vary the deed. Dixon *v.* Cook, 47 Miss. 220.

Latent ambiguities are raised by proof of extrinsic facts and by the same kind of proof may be explained, and the law will not stop in its endeavor to remove uncertainty in written instruments until it is found that the contract must be set aside and another one substituted before certainty can be obtained. It will not pronounce a contract incurably uncertain until it has cast upon it all the light to be gathered either from a collocation of all words used or from the facts which the extrinsic testimony establishes. Peacher *v.* Strauss, 47 Miss. 353.

Parol evidence, the effect of which is not to vary or modify a written contract, but to show that there was no contract because of fraud, is admissible in defense of an action thereon. Optical Co. *v.* Jackson, 63 Miss. 21.

Judicial proceedings may be attacked collaterally for fraud and parol evidence is admissible to establish it. Christian *v.* O'Neal, 46 Miss. 669.

The rule which forbids the varying of a written instrument by parol applies only to the parties to the writing. Whitney *v.* Cowan, 55 Miss 626.

Although a writing exists, if parol evidence of its contents is introduced without objection on the ground that it is secondary, exception will be taken to have been waived, and after the testimony has been closed, it is too late to object. Storm *v.* Green, 51 Miss. 103.

The rule excluding parol evidence to contradict a written instrument does not apply to evidence as to failure of consideration. Parol evidence is admissible to show that there was no consideration, or that it was different from that expressed, and that it has failed. Pollen *v.* James, 45 Miss. 129.

And there is no distinction, in this State, between sealed and unsealed instruments as to the right to impeach the consideration. Meyer *v.* Casey, 57 Miss. 615; Cocke *v.* Blackbourn, 57 Miss. 689; Ohleyer *v.* Bernheim, 67 Miss. 75; 7 So. 319.

Where, in a deed or other contract, the consideration, or an admission of its receipt, is stated merely as a fact, that part of the instrument is viewed as a

by Eckford. On the trial, plaintiff, on cross-examination, testified that King executed an agreement on May 8, 1879, to pay six bales of cotton for balance due him for rent for 1879. In explanation, plaintiff offered to show that King had at that time subrented part of the place for the year 1879 for fourteen bales of cotton, and on that day indorsed them to him as collateral security for the payment by King of the twenty bales of cotton, and that the contract was for twenty bales. The court excluded this evidence, and plaintiff excepted. The defendant introduced the

---

mere receipt, and is subject to be varied, modified or explained by parol; but it is otherwise where the stated consideration is the nature of a contract, and creates, extinguishes or vests a right. Baum *v.* Lynn, 72 Miss. 932; 18 So. 428.

Accordingly, a release embodied in a conveyance of which it is the consideration cannot be contradicted by parol, since it extinguishes a pre-existing right. Baum *v.* Lynn, 72 Miss. 932; 18 So. 428.

While parol evidence to vary a written contract is inadmissible, that which explains an ambiguous expression in the writing is competent. Thus, an acceptance of a bill in these words: "Accepted. Payable after my advances are paid," may be explained by showing what advances were meant, even including those afterwards made. Shackelford *v.* Hooker, 54 Miss. 716.

In a suit growing out of a letter of credit, it is not permissible to explain the letter and give it a meaning different from that its language expresses, *e. g.*, that it was written merely for accommodation and information, and that the addressee had no funds in the hands of the person on whom it authorizes bills to be drawn. Pollock *v.* Helm, 54 Miss.. 1.

If a paper signed by the party to be charged makes such reference to another writing as that, construing them together, all the terms of a bargain are expressed, it is sufficient under the statute of frauds; and parol evidence is admissible to identify the paper referred to and apply the references. Wilkinson *v.* Taylor, 67 Miss. 231; 7 So. 356.

Defendants contracted on April — with plaintiff for the purchase of a soda fountain, to be shipped by plaintiff from Boston. The written order provided, among other things, for transportation, "soon as possible." The fountain was not shipped until May 27, and defendants refused to accept it or pay therefor because of the delay in shipment. Plaintiff sued for the price. Defendants offered to prove that plaintiff's agent, at the time of the sale, represented that the fountain was in stock and could be forwarded promptly in time for use by May 15. Held, that the evidence did not vary or contradict the language of the written contract, but merely applied to the subject-matter, and was, therefore, admissible. Tufts *v.* Greenwald, 66 Miss. 360; 6 So. 156.

Parol evidence of the surrounding circumstances is admissible on behalf of the seller to remove an ambiguity in contracts of conditional sale entered into from time to time with the same vendee in respect to the period at which

record and proceedings instituted by plaintiff in the Clay county court, to which plaintiff objected. From a verdict and judgment for defendant, plaintiff appeals.

APPEALED from Circuit Court, Monroe county, J. A. GREEN, Judge.

Reversed and remanded, February 12, 1883.

*Attorney for appellant, Baxter McFarland.*

*Attorneys for appellee, Houston & Reynolds.*

Brief of Baxter McFarland:

\* \* \* It was error to exclude, at the instance of appellee, Eckford, all testimony of appellant, Stockard, tending to show

the payments are to cease, and as to the result that would follow payments equaling the full value of the property. Ham *v.* Cerniglia, 73 Miss. 290; 18 So. 577.

In replevin by the conditional vendor, it is error to exclude parol evidence that, before the purchase of any of the articles mentioned in the several written contracts of conditional sale, except those in the first execution, he agreed, at the request of the buyer, to sell to her more extensively than had been previously contemplated, and that it was further agreed between them that the payments made from time to time should be entered as credits generally upon the entire account, and not upon any particular items. Ham *v.* Cerniglia, 73 Miss. 290; 18 So. 577.

Parol evidence is admissible to show that a deed absolute in terms is a mortgage. This is not changed by section 2896, Code 1871, providing that declarations of trust in land shall be manifested by writing. In such cases the court acts upon the idea that it is a fraud to insist on the conveyance as absolute, and that the statute of frauds cannot be invoked to cover fraud. Littleworth *v.* Davis, 50 Miss. 403; Klein *v.* McNamara, 54 Miss. 90.

Now, where the grantor parts with the possession of property conveyed by a deed absolute on its face, it shall not be proved at the instance of any of the parties by parol to be a mortgage unless fraud in its procurement be the issue. Code 1880, § 1299; Code 1892, § 4223.

Testimony of a tax-collector and his deputy that certain land, sold for taxes, and listed among lands sold to the State, was put on such list by mistake, is not an impeachment, but an explanation, of their official acts, and hence admissible. Hinson *v.* Forsdick, 25 So. 353.

Where the record of the board of supervisors shows that an assessment roll was not filed till September, testimony of members of the board of

that the notes of the sub-tenants indorsed by W. A. King to Stockard, the appellant, were intended as collateral security for the payment by King of the twenty bales of cotton for the rent of the premises during 1879. This excluded all the testimony, except the unpaid transferred notes.

In response to a question of his counsel, appellant, as a witness, narrated the circumstances under which the note for the six bales of cotton was given, and the transfer of the collateral was made by King to him. He stated that King had sub-rented parts of the leased premises, taking the notes or agreements of his sub-tenants for the rent of that year, 1879, payable in cotton, amounting in all to fourteen bales, and that on the 8th day of May of

supervisors disputing the record is inadmissible, as it cannot be impeached by parol evidence. McCord v. Shaw, 77 Miss. 900; 27 So. 602.

Where the agreement for a conveyance and the deed conveying the property merely show a sale subject to an existing lien, parol evidence is inadmissible, in the absence of fraud or mistake, to show that the grantees agreed to pay the debt represented by the lien. Maxwell v. Chamberlin, 23 So. 266.

Testimony of a tax-collector and his deputy that land was sold for taxes, and a deed executed on a certain day, and that the date inserted in the deed was a mistake, is admissible. Hinson v. Forsdick, 25 So. 353.

Where contracts of conditional sale entered into from time to time with the same vendee do not show when payments of the installments reserved in each contract are to cease, a parol agreement that the payments were to be credited on the vendee's general account, and not on any particular contract, is admissible to show reservation of title to all the property in the vendor till the vendee's entire account is paid. Ham v. Cerniglia, 73 Miss. 290; 18 So. 577.

Parol evidence cannot be received to show that, at the time a written contract of sale was made, the parties verbally agreed that title to the goods should remain in the vendor till the notes executed for the price were fully paid. Millburn Gin & Machine Co. v. Ringold, 19 So. 675.

Where a letter from a seller to a buyer stated the seller's understanding of the buyer's order for goods, repeated an advertisement to accompany such goods, and asked the buyer to check it over carefully, and, if correct, sign a statement, indorsed thereon, that the same had been all checked over carefully and found correct in every particular, such letter and indorsement, on the signing of such statement by the buyer, completed the contract, and, in absence of fraud, is binding on the parties, and parol proof to change the terms thereof was improperly admitted. Coates & Sons v. Bacon, 77 Miss. 320; 27 So. 621.

An acknowledgment in a deed of the payment of the consideration is subject to parol contradiction. Fowlkes v. Lea, 36 So. 1036.

An instrument signed by E., reciting that on or before a certain day, "I promise to pay to the order of H., $360, rent for 90 acres of land at $4 per

that year King brought these notes to appellant and indorsed them to him as collateral security for the payment of the twenty bales owed by King for the rent that year; and afterwards, on the same day, executed the note for six bales, "balance" of the twenty bales, some of which collaterals had been paid off; that this arrangement was the same as that for 1878, except that in 1878 King had given his note for the entire twenty bales, and in 1879 for the balance of six bales, after deducting the fourteen for which the collaterals were given, but that they were intended only as collaterals, the same as in 1878, and that this was the understanding at the time.

The motion to exclude was predicated upon two grounds—first, that the contract imported by the indorsement could not be changed by parol; second, that the note for the six bales given

---

acre, of L. plantation for the year 1901, value received," is not only a note, but a contract between the parties, so that parol evidence of an agreement of H. to put a fence around the place to keep cattle out, is inadmissible. Hightower et al. *v.* Henry, 85 Miss. 476; 37 So. 745.

The contract disclosed by a bill of sale, reciting the transfer of a half interest in a partnership for a stated price, and a note given by the purchaser for the balance of the price after paying a part in cash, cannot be varied by parol evidence that the purchaser, as part consideration, assumed the seller's share of the firm debt. Thompson *v.* Bryant, 75 Miss. 12; 21 So. 655.

Parol evidence cannot be received to show that, at the time of sale of personality for which a note was given, the parties verbally agreed that the title should remain in the vendor until payment of the price, and, if the price was not paid, it was the understanding that rent was to be paid for the property. Feld *v.* Stewart, 78 Miss. 187; 28 So. 819; same *v.* Thomas, *Id.*

A written contract cannot be varied by a previous or contemporaneous oral agreement, as to its scope and binding force. Chicago Bldg. & Mfg. Co. *v.* Higginbotham, 29 So. 79.

Where a written order for goods expressly excludes all agreements with agents not written therein, in an action for the price, parol evidence of a contemporaneous promise made by an agent is inadmissible on the issue of failure of consideration, but admissible to show fraud. Patten-Worsham Drug Co. *v.* Planters' Mercantile Co., 38 So. 209.

2

"In case any distress and sale shall be made, under color of this chapter, for rent or other thing, pretended to be due and in arrear, where, in truth, no rent or other thing is due or in arrear to the party causing such distress to be made, then the owner of the goods and chattels so distrained and sold, his executors or administrators, shall have remedy by action against the person in whose name or right such distress was taken, his executors or admin-

by King was the written contract for the rent, and no other could be shown.

Authorities need not be quoted in support of the proposition that contracts "may always be read in the light of surrounding circumstances" without violation of the rule against parol evidence.

In regard to the first ground, it is wholly untenable; a deed absolute on its face may be shown to be a mortgage, *a fortiori* may an indorsement on a note be show to have been intended as an indorsement only for certain purposes *as between the original parties*—that the note was intended, as in the case of absolute deed, as security only. 1 Daniel Neg. Ins., §§ 820, 833, 666, 667, 710, 712; Ross *v.* Espy, 66 Penn. St. 487; Susquehanna B'k. *v.* Evans, 4 Wash C. C. 480; Johnson *v.* Martinus, 4 Halst. 144; Pike *v.* Street, 1 Mood. & Malk. 226; (S. C. 22, E. C. L. 299); Kidson *v.* Dilworth, 5 Price, 564; Castrique *v.* Battigieg, 10 Moore, P. C. C. 94; Bruce *v.* Wright, 3 Hun. (10 N. Y. S. C.) 548; Byles on Bills (Sharswood Ed.), 267.

There is no written contract to be varied, nothing but a name written. The legal effect of the indorsement is to pass the title;

---

istrators, and shall recover double the value of the goods and chattels so distrained and sold, together with full costs, or may put the bond of the plaintiff in suit, to recover damages for wrongful suing out of said attachment, and shall recover thereon double the value of the goods and chattels, if the penalty of the bond amount to so much." Code of 1880, § 1311.

"If any distress or seizure and sale be made under color of law for rent and supplies pretended to be due and in arrears, where, in truth, no rent or sum for supplies is due or owing to the party causing the distress or seizure to be made, then the owner of the agricultural products or other property so taken and sold, his executor or administrator, shall have remedy by action against the person in whose name or right such property was taken, his executor or administrator, and shall recover double the value of the property, with costs, or may put the bond of the plaintiff in suit to recover damages for the wrongful suing out of the writ, and shall recover therein double the value of the property, if the penalty of the bond amount to so much." Code of 1892, § 2517; Code of 1906, § 2855.

Unless the relation of landlord and tenant exists, the statutory remedy of attachment for rent cannot be resorted to, and it is essential that the demand be for rent. Stevens *v.* Moore, 1 Miss. Dec. 537.

Under section 1301, Code 1880 (Code 1892, 2495), a landlord has a lien on all agricultural products of the leased premises, paramount to all other claims, to secure payment of the rent and for supplies furnished a tenant. The right to enforce this lien is not prejudiced in any manner by the termina-

that is all. But parol evidence may be introduced to show that the legal title is held in trust for some particular purpose. There is no statute against parol evidence of a trust in personal, such as exists as to real property. The intention of the parties should have effect. Daniel Neg. Ins., § 721, and notes.

As to the second ground of objection, *supra,* "that the note for the six bales given by King was the written contract, and none other could be shown," it is submitted that it is utterly baseless.

In the first place, it does not purport on its face to have been given for the entire rent, but only for a "balance" thereof, viz: six bales. It is, therefore, a written contract in reference only to a balance; all besides that balance is outside of the written contract, the agreement in reference to which must be sought for elsewhere than in the note. The word "balance" does not import that all the other has been paid; only that it is not embraced there. In the light of the evidence—of the surrounding circumstances, which were excluded—its meaning is clear; that is, that the balance left after deducting the fourteen bales for which the sub-tenants had given their agreements. As to the fourteen bales *not* included in the note for six bales, these notes had been turned over by King to secure payment thereof by King, and the note for six bales "balance" did not relate to the other fourteen bales due from King at all; as to those fourteen bales, the agreement was full and complete and valid. If that verbal agreement is ex-

tion of the lease, nor by the removal of the tenant or the products from the premises. The rule is different as to other goods, as to which the landlord has no lien, but only the right of seizure by attachment. Henry v. Davis, 60 Miss. 212; Fitzgerald v. Fowlkes, 60 Miss. 270.

One who was landlord, after conveying the premises to a third person, has no lien for supplies thereafter advanced by him during the term to enable the tenant to make a crop on the land. Watkins v. Duvall, 69 Miss. 364; 13 So. 727.

Under the Code of 1880, the lien does not exist if the landlord does not, either directly or through another, make the advances, but merely guarantees payment for supplies advanced to the tenant by another. To support the lien, the relation of creditor and debtor must exist between the landlord and tenant. Ellis v. Jones, 70 Miss. 60; 11 So. 566.

To entitle the landlord to the statutory remedy for attachment for rent, it is essential that his demand shall be for rent. An agreement of the tenant, as part of the expressed consideration of a lease, to pay as rent a debt which is not such in fact, will not change this. Paxton v. Kennedy, 70 Miss. 865; 12 So. 546.

cluded, the intentions of the parties will be ignored, and a fraud in favor of King be worked, it being competent the while for the parties to make it. In the name of right, a wrong will be done.

Appellant stated, and King admitted, that the agreement was for King to pay twenty bales of cotton for the rent of 1879, and the writing did not represent or profess to represent but six of those bales. The original agreement was not merged or superseded by the writing.

But the original lease for 1879, the agreement of lease, whether written or verbal, express or implied, was one thing, and the note given for payment of the rent quite another. The execution of the latter did not supersede or operate as a merger of the former. They might and did co-exist. They often do. The latter, being a convenient adjunct to the former, performs auxiliary and subordinate functions in aid of the former, assists in carrying it into effect.

Take the case of the lease of a lot, farm or house for six or twelve months by parol. It is competent to lease so long verbally, and the parol contract may comprise numberless provisions creating rights and duties in respect of the leased premises, yet if, by the terms of the lease, so far as they relate to the payment of the rent, the same be payable monthly, and notes be given accordingly, would it be held that "the notes were the written contract of lease, and none other could be shown?" Surely not. That would continue in force the same as if it had been in a separate writing, notwithstanding the notes for the monthly installments of rent.

If the verbal contract came within the statute of frauds, as contended by opposing counsel, the tenant, King, was subject either to the old contract for the rent of 1878, or to the void contract, and it is practically immaterial which, since they are substantially the same, so far as the amount to be paid is concerned. They might be looked to as evidence of or to uphold the contract *implied* by the law on account of the holding over, and the payment by King of rent; he says he paid in 1879, before he left, nine bales of the twenty bales he was to pay.

This implied contract, originating in January, 1879, was in no wise affected by the giving and taking, in May thereafter, of the note for the balance of six bales, for the very sufficient reason that it was not so intended by the parties, as is fully shown by

their sworn statements, and admissions, and otherwise. It cannot be denied that King was liable for the twenty bales from the 1st of January, 1879, up to the 8th of May, 1879, when the note for the six bales was given for the balance not included in the collaterals that had, just before its execution, been pledged by King to appellant as a security for the entire twenty bales. There can be no question of that.

The only point, then, is whether the execution of that note and the transfer of the others had the very unexpected and wholly unintended effect of changing King's liabilities and Stockard's rights under the existing contract. In the light of the circumstances surrounding the parties and their intentions at the time, most certainly not. The purpose was to *fortify,* not change nor diminish appellant's rights, under the contract theretofore governing, by the transactions in question. It was understood and recognized by both parties that King owed twenty bales for that year's rent, both before and after that transaction. King admitted it in his deposition, *taken,* but not *read* by appellee, Eckford, and in his note, written in June, 1879, and Stockard so understood it all the while, as did King, down to the time of the contrary holding by the court in this cause. There is no reason why the true and unmistakable intention of the parties should not have effect. * * *

The court erred in admitting the papers in the cause instituted by appellant in Clay county against King for the same rent. It was not levied upon the same products, but upon other articles, and appellant unquestionably had a lien upon the eleven bales levied on in this suit, and might proceed against them, notwithstanding he proceeded against other things also. Moreover, that proceeding in Clay county had been dismissed. * * *

Seizure of chattels under process is only constructively a discharge of the debt. It is deemed a payment only in those circumstances when, if not so regarded, the debtor would be twice deprived of his property on the same debt or judgment. In other cases it is no satisfaction. Parker *v.* Dean, 45 Miss. 408; Banks *v.* Evans, 10 S. & M. 57; Wade *v.* Watt et al., 42 Miss. 254; Wright *v.* Watt et al., 52 Miss. 634.

This eleven bales of cotton was property upon which appellant had a lien to secure his rent. The levy in Clay county was made by the sheriff on property of several persons' other than King,

and it cannot be said of that that King, the debtor, would be liable. to pay the debt twice, which is an essential element in the rule. The principle invoked here, it must be observed, is quite a different thing from that principle by which one person may drive another to some other fund—a principle enforceable alone in a court of equity. As, for instance, in the case of Champenois *v.* Fort, 45 Miss. 355. That is not at all applicable.

The test is, could the debtor himself avail of the things that were done under that writ? Certainly not. Very little of it was his property, and nothing was done with any of· it by virtue of the levy. The proof shows that the property of persons other than King was used by them, and was not devoted to payment of the debt at all; that, therefore, they are *not* deprived of it, much less was King deprived of it. They used the same after as before the levy. And, the principle being for the benefit of the debtor, not of a third person, like appellee, Eckford, the court erred, in giving a charge which induced the jury to deduct that property from the debt of appellant.

Pittman testifies that the corn of these people was used after, just as before, the levy. It makes no difference, so far as the principle under consideration is concerned, whether by Stockard's orders or not. If Stockard *waived* the levy, that did not *pay* his debt or *deprive these people,* much less King, of their property. The most that can be said of it is that the levy was without any practical effect as to them.

Appellant testified how much corn of that levied on in Clay county had been used or sold by him. He testified that he sold the rented premises in question in January, 1880, and at the same time 270 bushels of the corn levied on (which included more than was in the crib when the return was made, for that showed only 250 bushels; Marshall's and Roberts' was put in afterwards), which was worth 50 cents per bushel; 500 bushels of the cotton seed, worth 8 cents per bushel, and a stack of fodder worth $5— in all, $180. That the tenants to whom it belonged had used the other cotton seed and corn levied on for bread and feeding their stock (which is just what they would have done had no levy been made). And he stated that he never sold the corn of the tenants (or other persons) levied on, nor did he have any benefit therefrom. His testimony on this point is particularly and specially referred to. Thus it is shown that none of the property of others

than King, levied on with the Clay county writ, can be included in the estimate, and that the only property left to deal with is that, the value of which, as above shown, is but $180.

It is equally clear that appellee, Eckford, cannot have the value of that deducted from appellant's debt, for the appellant stated that the corn, 270 bushels, had been applied by him as a credit upon a debt of 600 bushels of corn due from King to the firm of Stockard & Bonner. He had the right to do that. That appropriation operated no payment of this debt in legal contemplation, because, according to the principles upon which such payments or discharges of the debt take place, as announced in the authorities, it cannot be said that it will subject the debtor to pay the same debt *twice.* By the terms of the agreement between Stockard & Bonner and King, at the time of the sale under the trust deed, in March, 1879, the latter was to replace to Stockard & Bonner the corn they then allowed him to retain, which they had purchased under the trust deed against him; therefore the appliction of the corn in the crib was rightful and in strict pursuance of the agreement. Hence, King cannot say that unless the value of the corn in the crib, levied on, shall be regarded as in payment of the rent due, he will have to pay that debt, or that much of it, twice, nor can Eckford. The facts and circumstances of the Clay county levy do not bring this case within the radius of the principle by which it is sought to charge appellant with the value of the property there levied on, as to any of it. This is not the time, place, or proceedings when a marshaling of rights and priorities can be effected. The appellee, Eckford, cannot have the benefit of the deductions under the principle appealed to by him, and hereinbefore discussed, or any other. That levy cannot be made to operate a payment of one cent.   *   *   *

Counsel say of the note for six bales given by King that it shows the "balance due," and that it cannot be show by parol that any more is due. Why not? Unless these words in law have stamped upon them the meaning that there is *no more* due, it may be done. They have no such signification as that all else has been paid, and that these six are all now due. As used here, these words clearly mean that, besides the other fourteen bales, there is a balance of six more due—all being due. The words are susceptible of different interpretations, and, read in the light of circumstances, bear the interpretation urged for appellant, and

not the arbitrary and exclusive one opposite counsel desire to have affixed to them. The writing shows that six are due, but not that no more are due. You look to the writing for six, out-side of it for the residue.

The affidavit of appellant to the Clay county proceedings does not *fix* the number at six bales, and is *not* a solemn admission that there were but six due from King, and that the residue were due from King's sub-renters or others. The affidavit is explain-able, just as the note is. It was made, naturally and properly, against others as well as King, as appellant held their rent claims, and it was true, as stated in the affidavit, that those other persons owed him, but they owed him on account of the fact that he held the collaterals, and he was in the line of enforcing those collat-erals, as it was proper he should. That was all. The making of that affidavit does not exclude the right to claim against King. It is not an estoppel. To repeat, it neither *fixes* of itself the number due nor admits that no more were due by the previous contract or agreement.

There was not one sufficient levy previous to this one. As stated, the Clay county levy was mainly to enforce the collaterals, and was against others than King, and the effect of that has been argued. The principle against two levies, one having been suffi-cient, does not apply here. Moreover, the property levied on was rightfully applied to the claim of Stockard & Bonner against King for 600 bushels of corn—all the corn of King was so ap-plied, as stated by appellant.

Brief of Houston & Reynolds:

\* \* \* It is assigned for error that the court erred in ad-mitting the note of W. A. King for six bales of cotton, executed May 8, 1879. The main fact in issue in the case was the amount of rent due from King to appellant. Certainly a note executed by King for the rent, and accepted by appellant, was the best evidence of the amount of rent that was due. The proposition seems to us self-evident.

The verbal contract for the renewal of the lease of 1878 for the year 1879 was void by the statute of frauds, because it was not to be performed within one year from the time of the making thereof. When this was excluded by the court, counsel for appel-lant attempted to extricate his client by showing a valid lease for

1878, and a continuation of possession for the year 1879 under a verbal contract the same as the valid one made in 1878. From these facts the law implied a contract to pay the same rent for 1879 as was stipulated to be paid in 1878. To rebut this implied contract, we introduced the note of King given for the rent of 1879. Our purpose was to show an express contract in writing, and the note establishes it. An express and an implied contract in reference to the same subject matter cannot exist at the same time.

·The note was admissible in evidence for another reason. If there had been a previous valid verbal contract of lease, it was merged into the note subsequently executed upon the familiar principle that when a contract is reduced to writing it becomes the sole exponent of the contract.

The very purpose in introducing the note in evidence was to "supersede and exclude the verbal and implied contract." It was the best evidence; it was an express contract, and the best evidence must always be introduced; and where there is an express contract, one cannot be implied.

It is assigned for error that all verbal evidence of appellant tending to show that the notes given to King by his sub-tenants for rent of part of the premises, and indorsed by King to appellant on the 8th of May, 1879, were intended by the parties simply as collateral security for the payment by King of the twenty bales of cotton to appellant as the rent of 1879, was improperly excluded.

The object in introducing the verbal understanding or agreement was to show that King was to pay twenty bales of cotton rent. Contemporaneous with such verbal agreement was executed the following writing:

"On the 1st of November next, I promise to pay J. J. Stockard six bales of cotton, average classification, weighing each five hundred pounds, delivered in West Point, Mississippi, for the balance due him for the rent of his farm near Palo Alto, Mississippi, this year of 1879. This May 8, 1879.          W. A. KING."

Testimony tending to show that King was due twenty bales instead of six bales was contradictory of the writing. Testimony tending to show that more than six bales was the "balance due him" (Stockard) for the rent of his farm for the year 1879, was contradictory of the note.

Here is a written contract which stipulates for the payment of a certain rent for a certain term. Now, can you so vary or contradict the writing by showing a contemporaneous parol agreement to pay a larger sum as rent than the writing stipulates? To state the proposition is to answer it. If the object in introducing the verbal understanding was to show that the notes of the sub-tenants were transferred by King to Stockard as collateral security for King's verbal agreement, made at the time, to pay twenty bales of cotton rent, then the testimony was properly excluded, for the following reasons:

1. It contradicted the writing read in evidence, which specified six bales as the balance of rent due.

2. The fact in issue was the amount of rent agreed to be paid by King to Stockard, and to this it was not relevant to show for what purpose the notes of the sub-tenants were transferred.

3. King indorsed the notes in blank to Stockard, and this undertaking is defined by the law, and cannot be modified by parol evidence. Baskerville *v.* Harris, 41 Miss. 539; Hardy *v.* Pilcher, 57 Miss. 18.

If King had been sued upon these indorsements, he would not have been permitted to show by verbal testimony that he was not to be bound, and that the notes were transferred as collateral security.

It is contended by opposite counsel that the note does not purport to be given for the entire rent, but only for the "balance" thereof, viz: six bales; that it is a written contract for balance, and all outside of this must be sought elsewhere than in the note. This is ingenious, but is it sound? The note is for six bales of cotton "for the balance due Stockard for the rent of his farm for 1879." It is not for the "balance;" it is for the balance *due* on the rent for 1879, and to prove by parol that there was any more due would contradict the note.

Counsel for appellant asks, "Does the note supersede the former verbal contract?" We answer that it does. If an implied contract is relied on, that would be superseded by a subsequent express contract. If an express verbal contract is relied on, it is void, because not in writing; and, if valid, it would be extinguished by a subsequent contract in reference to the same subject matter.

We do not controvert the authorities cited by counsel that, a

tenant holding over, the law implies a contract to pay rent at the same rate as under his former tenancy, but in this case there can be no implied contract, because there is a written express contract.

We have omitted to state that which we should have done before—that when appellant sued out his writ of seizure in Clay county, and in the affidavit which he made he states that he leased his plantation to W. A. King, J. W. Mitchell, and L. J. Roberts, and that said King owes five bales of cotton. This is a solemn recognition that the amount of rent due from King was six bales of cotton, less one paid before the proceedings were commenced.

The fourth error assigned is that the court erred in admitting as evidence the papers in the cause instituted by appellant against King in Clay county for the rent of 1879 and for the same premises. Stockard had a lien on all the agricultural products produced by King for the rent due him. If King had sold to Eckford a part of these agricultural products, leaving upon the premises a sufficiency to satisfy the rent due Stockard, then Eckford would be protected in his purchase, and Stockard would have been compelled to resort to that unsold and remaining on the leased premises. Rollins v. Thompson, 13 S. & M. 524; Dillon v. Bennett, 14 S. & M. 174; Champenois v. Fort, 45 Miss. 358.

We show that Eckford was a purchaser for value, and that there was a sufficiency of products left on the premises to pay Stockard. This was sufficient of itself to have discharged the cotton purchased by Eckford from the lien, and to have forced Stockard on what was left. But we were not content to rest the case on this, but went further and proved a former writ of seizure for the very same rent, and a levy of it upon a sufficiency of property of King and his employees to satisfy the amount of rent claimed, and a delivery of this property by the officer making the levy to Stockard, or to some one designated by him, and the subsequent appropriation and sale of the property by Stockard. A landlord cannot make a second levy for the same rent after he has once levied a sufficient distress and then abandoned the proceedings. Taylor's Land & T., § 565; Everett v. Neff, 28 Md. 176; Smith v. Gordon, 4 B. & Ad. 413; "4 Eng. C. L."

The levy of the first writ of seizure upon a sufficiency of personalty to have discharged it is a satisfaction and a bar to a second writ, especially when the property first seized is appropriated

by the plaintiff in the suit. James *v.* Dowell, 7 S. & M. 333; Parker *v.* Dean, 45 Miss. 408; Wright *v.* Watt, 52 Miss. 634.

The return of the officer who levied the first writ of seizure shows that he left the property seized in charge of certain persons by direction of appellant. Pittman and appellant both testify that all the property attached was used by appellant's directions, or sold by him to Coggins. King's property, sufficient in amount to pay the rent claimed from King, was levied upon by the officer, and the property delivered to appellant and appropriated by him. · If this is not a satisfaction of the rent, then there can be no satisfaction by the levy of process. The rent was a prior lien on the property attached. Stockard & Bonner were not the landlords of King, and their claim for corn sold King was not a lien, and they had no right to apply the property to the satisfaction of this claim.

It is not a fact that the property seized was not the property of King. All of it was King's property, or the property of parties who were croppers with him, and, of course, liable to the rent. No one made any claim to the property; it was all taken charge of by Stockard and applied to the debt of Stockard & Bonner against King.    *    *    *

As to the case on its merits. There were two leading questions of fact—the amount of the rent and the satisfaction of it.

The verbal contract made in 1878 for the rent of 1879 was void by the statute of frauds, because it was not to be performed within a year *from the making thereof*. The implied contract from the continuance of possession after the expiration of the first term, was extinguished by the special contract evidenced by the note executed May 8, 1879.

The amount of rent, as fixed in the note, was six bales of cotton, worth 10 cents per pound, amounting to $300. There was paid 512 pounds of lint cotton, worth $52.20, which made the balance due at the time of the commencement of this suit $248.80.

But, if in error in any of these positions, the affidavit made by appellant when the first proceedings were commenced claimed that the amount of rent then due was only five bales of cotton, or $248.80, and this affidavit, coupled with the note, will necessarily lead to the conclusion that the amount of rent was correctly stated in the note. If correct in this, King owed appellant $248.80.

There was a satisfaction of this amount by the levy of the first

writ of seizure and the delivery of the property to Stockard. The officer's return shows that he levied upon 490 bushels of corn, worth $245; 600 bushels of cotton seed, worth $48, and fodder, $5; total, $298 exceeding the amount of rent due. If you deduct Roberts' and Marshall's corn, still there is a sufficiency in value to pay the rent. The property seized was subject to the lien for rent; no third person claimed it, and there was no discharge of the levy. Stockard took charge of the property, sold it, and then dismissed his proceedings, and claimed the right to credit the value of the property on the debt of Stockard & Bonner. If this levy, under the circumstances, is not a satisfaction in law of the rent, then all the adjudged cases are wrong.

Opinion.—Cooper, J.:

The fact that King, in May, 1879, executed and delivered to Stockard a written agreement for the payment of six bales of cotton, which is therein stated to be the "balance of the rent due for the year 1879," did not preclude Stockard from introducing evidence to show the fact to be that twenty bales, and not six, was the rent to be paid for that year. This written agreement for the payment of the six bales of cotton was not, nor did it purport to be, the contract of the parties for the lease of the lands, and the parol evidence offered did not limit or contradict its terms. Nor was the landlord precluded, by accepting the assignments of the contracts of the sub-tenants of King, from showing the agreement to have been that they were received as collateral security for, and not as payment of, rent. The written transfers were evidence only of the fact of such transfers, but the consideration for which or the agreement upon which they were to be so transferred is not shown by the written indorsements thereon, and it was competent to prove for what purpose and on what agreement they were assigned.

It was not error to admit in evidence the record of the proceedings in Clay county. The property there seized was taken under and by reason of a demand on the part of the landlord for rents, and he cannot be permitted, having acquired possession for the satisfaction of that demand, to direct the proceeds of the property to the payment of another claim not mentioned in his complaint, and as to which he had no lien on the property seized.

The demand for rent still due ought to be credited by the value of the property seized in that suit and converted by Stockard.

*The judgment is reversed* and cause remanded.